# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ERNEST KNIGHT,**
        **Petitioner,**

**v.**                                        **Case No.  4:05cv187/MP/MD**

**JAMES R. MCDONOUGH,**[1]
        **Respondent.**

_____

## ORDER and
## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 11) to which petitioner has replied (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

---

[1]James R. McDonough succeeded James Crosby as Secretary of the Florida Department of Corrections and is automatically substituted as respondent.  *See* Fed. R. Civ. P. 25(d)(1).

## BACKGROUND AND PROCEDURAL HISTORY[2]

On August 16, 1999 at around 1:30 p.m. a group of black males (variously put at three to five individuals) wearing ski masks and carrying guns entered the Tallahassee Mall in Tallahassee, Florida, proceeded to the Carlyle & Co. Jewelers store in the mall, broke into several display cases, and made off with seventeen Rolex watches.  They were seen leaving in a late model silver colored Nissan Maxima which had been parked in the fire lane directly in front of the mall entrance. The car had no tag.  When law enforcement arrived a few minutes after the robbery they noticed fresh blood on the main entrance door to the mall, along with a fingerprint.

Meanwhile, based on the description of the vehicle provided by witnesses, officers began looking in the area for a vehicle matching that description, and in a short time located a suspect vehicle in a nearby apartment complex.  There was no one in the vehicle, but an officer saw several white plastic items in the back seat that appeared to be containers similar to those that the watches from Carlyle & Co. came in.  Officers also noticed blood on the steering wheel, the gear shift lever and on a license tag, which was inside the vehicle.  In the glove compartment they found a Royal Rental Car Company rental agreement showing that the petitioner had rented the vehicle in  Miami on August 12.  They also found two traffic citations issued to petitioner, both in the early morning hours of August 13, one in Orange County and one in Madison County, Florida.   The fingerprint on the mall door matched petitioner's, and DNA testing confirmed that the blood on the mall door and in the vehicle was petitioner's.

The case was tried to a jury beginning on March 14, 2001, and petitioner was found guilty of robbery with a firearm.  He was sentenced to life in prison as a prison

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

releasee reoffender.  Petitioner's direct appeal was unsuccessful.  He then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, which the trial court denied in a written order without a hearing (ex. R, pp. 151- 155),[3] and the appellate court affirmed.  Petitioner also filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800 which was unsuccessful in the trial and appellate courts.  Respondent does not claim that the instant federal petition is untimely, or that any ground raised here was not properly exhausted.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

---

[3] Respondent has filed a lengthy record with lettered exhibits.  The pages of the exhibits are variously numbered, according to which court the exhibit emanated from.  All references herein will be to doc. 14, the notice by which respondent filed his exhibits, and the court will use the page numbers as they appear in the exhibits.

in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,*

123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v.*

*Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner here has presented the court with twelve grounds for relief: four in his petition, and eight more in his memorandum in support. Two are identical. For consistency, the court will consider the grounds in the order presented, as respondent has done in his response, but for clarity has added a "P" or an "M" to identify the grounds raised in the petition or the memorandum, respectively. All the grounds advanced by petitioner are based on claimed ineffective assistance of counsel.

<u>Clearly Established Federal Law</u>

As this court is well aware, in order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*,

513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). The court will

therefore review the decisions of the state courts in light of this well-established federal standard.

**Federal Review of State Court Decision**

    **1P.**    <u>Failure to move to suppress.</u>

    Petitioner first faults his counsel for failing to file a motion to suppress blood evidence that was obtained pursuant to a warrant based on falsehoods.  The warrant affidavit presented to the magistrate the day after the robbery read as follows:

> On 081699 at approximately 1:24 pm, five black males wearing masks and armed with handguns entered the west main entrance to the Tallahassee Mall.  The suspects went to Carlyle & Co. Jewelers which is located just inside the mall entrance.  The suspects produced large hammers and proceeded to smash the jewelry cases while other suspects ordered the employees and customers on the floor at gunpoint.   The suspects took several Rolex watches and all the suspects fled from the scene through the front entrance.  The suspects were seen by an off-duty Leon County Sheriff's Deputy enter a late model Nissan Maxima, silver in color.
>
> The vehicle was located a short time later at 1000 Sharer Road.  Evidence from the jewelry store was found in the vehicle.  It was found to be a rental vehicle.  The rental company advised that it was rented by Ernest Knight, black male, 042876.   The car contained what appeared to be blood stains.  The Tallahassee Police Department Identification Unit advised that blood was found on the exit door of the mall where the suspects had been observed fleeing.  It appeared that a suspect may have cut himself while smashing the glass.  A latent fingerprint found at the spot of the blood stain on the door was identified via AFIS and verified as that of Ernest Knight, black male, 042876.

(Ex. A, p. 4).

    Petitioner says that two statements in the warrant affidavit were untrue: (1) "[t]he suspects were seen by an off-duty Leon County Sheriff's Deputy enter a late model Nissan Maxima, silver in color,"  and (2) "[e]vidence from the jewelry store was found in the vehicle."  Petitioner further says that the affiant, Officer Moody, later admitted under oath that the first statement was untrue.  Petitioner then reasons that since the affidavit contained a provably false statement, his arrest was illegal; that since his arrest was illegal, the subsequent taking of his blood samples

was illegal; that the blood test results matching his blood to the blood found at the mall and in the car should have been suppressed; that there was insufficient other evidence to tie petitioner to the crime; and that had his attorney moved to suppress, he would not have been convicted.[4]

Petitioner presented this claim to the Rule 3.850 court. That court identified *Strickland* as the controlling legal standard, and rejected the claim without a hearing, holding:

> Defendant claims his counsel failed to suppress inculpatory blood evidence, asserting it was obtained from an illegal arrest. He claims the probable cause for the arrest was established on falsehoods. The defendant was arrested in relation to a robbery that took place at Carlyle & Co. Jewelers on August 16, 1999. However, before the arrest warrant was issued, officers found an abandoned car on 1000 Sharer Court which matched the description given by a witness at the scene of the robbery. Trial Tr. vol. 3, 375:3-7 (Mar. 14, 2001). Upon approaching the car, Investigator John Moody saw in plain view a watch holder in the back seat, which was similar to the ones used by Carlyle & Co. Jewelers. Trial Tr. vol. 3, 341:10-12 (Mar. 14, 2001). During the time the car was under surveillance, Investigator Moody became aware the car had a rental agreement under the Defendant's name. Trial Tr. vol. 3, 345:1-15 (Mar. 14, 2001). Upon inspection of the interior, blood was found on the seats, which was also found at the exit door of the mall where the suspects were observed fleeing. Trial Tr. vol. 3, 344:4-7 (Mar. 14, 2001). Even in absence of the alleged falsehoods, there were sufficient facts to constitute probable cause for the issuance of an arrest warrant. There was no illegal arrest, and thus no sustainable objection would have been raised to suppress blood evidence drawn from the defendant resulting from the arrest.

(Ex. P, pp. 151-152).

In Florida, the veracity of an affidavit can be attacked if the defendant can (1) point out the specific provision of the affidavit alleged to be defective, (2) allege that the defect consisted either of a deliberate falsehood or a statement in reckless disregard of the truth, and (3) offer proof supporting the allegations in the form of

---

[4]Respondent's approach to this claim is totally off the mark (doc. 11, p. 7). Respondent argues that there was indeed a motion to suppress the blood evidence. This is true, but the basis for the motion was the purported *ex parte* motion discussed in the second claim, below. It was not grounded on the alleged false affidavit.

affidavits or other sworn or reliable statements of witnesses, or satisfactorily explain their absence. *Johnson v. State*, 660 So.2d 648, 655 (Fla. 1995) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978)). If the defendant succeeds in satisfying these three requirements, he is not automatically entitled to relief. Rather, he is entitled to a hearing on his challenge to the veracity of the affidavit. At the hearing, the defendant would have to prove not only that the statements were false and were made intentionally or recklessly, but that they were material. That is, he would have to show that without the offending language, the affidavit would not have supported a finding of probable cause. *Id*. The *Johnson* decision is based directly on *Franks*, which has the same requirements of pleading and proof.

Thus, for petitioner to succeed in establishing that his attorney's performance was deficient and that he was prejudiced thereby, he was required to show the state court four things: (1) that he had a colorable basis for challenging the veracity of the warrant affidavit such that, had his attorney asked for a hearing, he would have been granted one, *Franks, supra*, 438 U.S. at 171, 98 S.Ct. at 2684 (noting that "[a]llegations of negligence or of innocent mistake are insufficient"); (2) that Officer Moody's untruthful statements were "deliberate falsehood[s] or [were made in] reckless disregard for the truth," *id*.; (3) that without the falsehoods, the affidavit would have been insufficient to support a finding of probable cause, *id*. (noting that even if the petitioner can show deliberate falsehood or reckless disregard for the truth, a motion to suppress will fail if, after the challenged language is set aside, "there remains sufficient content in the warrant affidavit to support a finding of probable cause."); and (4) that he was prejudiced by his attorney's failure to move to suppress based on the alleged falsehoods in the warrant affidavit.

The state court essentially found that petitioner failed to established ineffective assistance because the alleged falsehoods were not material. In determining the merit of petitioner's proposed Fourth Amendment challenge, the state court excised the allegedly false portions of the affidavit and found that the remaining facts on which Officer Moody relied in obtaining the warrant (his

discovery of an abandoned car which matched the getaway car as described by a witness at the scene of the robbery, his observation of evidence from the jewelry store in the abandoned car, his discovery that the car was a rental vehicle rented by petitioner, his observation of blood in the interior of the car and knowledge that there had been  blood on the mall exit door from which the suspects fled), were sufficient to support a finding of probable cause.   Although the state court proceeded directly to the materiality factor of *Franks*, this does not render unreasonable its conclusion that petitioner failed to establish deficient performance and prejudice under *Strickland*.  Moreover, although the state court, in reciting the remaining facts which supported a finding of probable cause, cited to Investigator Moody's trial testimony instead of his warrant affidavit, this did not render its application of *Franks* or *Strickland* objectively unreasonable, because the facts recited by Moody on both occasions were essentially the same.[5]  Even if this court were to decide that the state court unreasonably applied *Franks* when it failed to limit its materiality consideration to the language of the warrant affidavit, petitioner is not entitled to federal habeas relief because an independent review of the merits of his ineffective assistance claim demonstrates that he is not in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

The first part of petitioner's argument goes to the truthfulness of the statement concerning the identity of the person who saw the robbers enter the getaway car.   While it turned out that this part of the affidavit was untrue, trial counsel would have failed in any attempt to show that it was, if untrue, a deliberate falsehood or recklessly untrue.  The robbery occurred in broad daylight at a large mall in the state capitol.  There were many people present.  Law enforcement arrived within minutes, and started their investigation.  Officer Moody, who signed the arrest warrant affidavit, interviewed a number of people.  One witness, Dennis Raitt, a dentist, was just leaving the mall when he observed three black males run out of the

---

[5]The primary difference is that Officer Moody's trial testimony specified a watch holder as the evidence he observed in the vehicle, instead of simply "evidence from the jewelry store."

mall and jump in a silver four-door car that had no license tag (ex. G, pp. 464-465). David Kirk, the store manager, said that four men entered his store, smashed his display cases, and took Rolex watches.  Mr. Kirk followed them out to the front of the mall and saw them, or at least two of them, get in a gray late model car, possibly an Infinity or a Camry that had no tag, and drive away (ex. F, pp. 145-165).

Petitioner says that Officer Moody was untruthful when he stated that an off-duty sheriff's deputy saw the robbers get in the car and drive away.  This was first discovered during Officer Moody's pre-trial deposition (ex. P, p. 34) (thereby alerting defense counsel of the need to move to suppress the evidence) and confirmed by Officer Moody at trial (ex. G, pp. 374-375).  Petitioner's contention appears to be correct at first blush, but petitioner can get no further.  Officer Moody did talk to an off-duty deputy who was present at the mall when he arrived, but she was not the one who described the car.  However, Officer Moody testified that although he was mistaken in naming the off-duty deputy as the person who described the getaway car, he was given the description by another witness (ex. G, p. 375).

Thus, while the identity of the person who described the robbers getting into the car was not factually correct, it was far from a deliberate falsehood.  If Officer Moody had kept his facts straight, he could and would have sworn in the affidavit that the store manager and a local dentist saw the robbers enter the car and drive away, that the car was silver or gray in color, and that it had no tag.  Those totally true statements would have been sufficient to support the issuance of the arrest warrant.  And because Dr. Raitt and Mr. Kirk were not confidential informants, it was not necessary for Officer Moody to establish their credibility in the affidavit.  *Pagan v. State*, 830 So.2d 792 (Fla. 2002).[6]  Therefore, the false statement was clearly nothing more than a simple mistake.  Since petitioner could not have shown that the error was intentional or reckless, he would not have succeeded in excising the

---

[6]Although he does not make the assertion in so many words, petitioner seems to be implying that Officer Moody bulked up his affidavit by naming a law enforcement officer as his witness.  That argument might have some strength if the only real witness had been a confidential informant, but that was not the case.  As a practical matter, two witnesses, a dentist and a store manager, who gave essentially consistent descriptions of events, would have been at least as credible on paper to the magistrate as one off-duty deputy.

mistake from the warrant affidavit.  And since the remaining content of the warrant affidavit was clearly sufficient to support the magistrate's finding of probable cause for petitioner's arrest, petitioner cannot show that his attorney's performance was deficient.  Therefore, if petitioner's attorney had filed a motion to suppress as petitioner urges, he would have lost.  He therefore cannot show prejudice, because a petitioner "cannot be prejudiced by his counsel's failure to make a losing objection."  *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005).

The second part of petitioner's argument goes to what Officer Moody said he found in the car when he examined it.  According to the warrant affidavit, "[e]vidence from the jewelry store was found in the vehicle."  (Ex. A, p. 151).  Petitioner says this statement was a deliberate or reckless falsehood.  Petitioner cannot succeed on this part of his claim, however, for two reasons: he cannot show that this statement was intentionally or recklessly untrue, and even if he could, the affidavit would have supported a finding of probable cause without the statement.

When Officer Moody looked in the car, he saw white plastic objects that were "exactly like" watch holders he had seen at the jewelry store immediately after the robbery (ex. G, p. 342).  Plaintiff says that this was not true evidence because there was never any proof that the objects actually came from the jewelry store.  But while the objects were not the proverbial smoking gun, their presence in the car was reasonably described as "evidence from the jewelry store," because they were exactly like the watch holders Officer Moody saw at the store.  "Evidence" does not have to be irrefutable proof, as petitioner seems to believe; it merely has to be something that tends to prove or disprove a fact.  Fla. Stat. § 90.401.  Therefore, it is highly unlikely that the trial court would have found Officer Moody's statement concerning the presence of evidence in the vehicle to be false, much less intentionally or recklessly false.  Moreover, even if the challenged language were found to intentionally and recklessly false and were excised, the warrant would still have been issued.  Without this language, the affidavit alleged that black males robbed a jewelry store at a mall; that a car matching the description of the car used in the get-away was found soon thereafter; that the car had recently been rented by

petitioner in Miami; that there was blood in the car as well as on the door of the mall where the suspects had been seen fleeing; that it appeared that a suspect had cut himself smashing display cases; that a latent fingerprint at the spot of the blood on the mall door matched the petitioner's fingerprints; and that petitioner was a black male.  As above, petitioner cannot show that he was prejudiced by his attorney's failure to move to suppress the blood evidence by attacking the veracity of the warrant affidavit.  He is therefore not entitled to federal habeas relief.

     **2P.**   **<u>Failure to move for recusal.</u>**

     Petitioner next contends that his attorney should have moved to recuse the trial judge because of improper conduct between the judge and the prosecutor. After petitioner's arrest the prosecutor sought an *ex parte* order authorizing a blood draw from petitioner.  Defense counsel did not receive a copy of the order.  This issue was the subject of defense counsel's motion to suppress the blood evidence. Counsel argued that because the motion was filed *ex parte* with no notice to defendant or his attorney, the taking of blood samples was improper, and the evidence should have been suppressed.  The motion failed after a hearing, the court holding that the requirements of Fla.R.Crim.P. 3.220(c) had been met, and that counsel's failure to receive notice of the blood draw was inadvertent.  The subject rule provides that after the filing of the charging document, the court can require the defendant to permit the taking of blood samples, among other things.  It further provides that reasonable notice of the time and place for the blood draw must be given to the defendant or his counsel.

     The claim that the court was biased and should have been asked to recuse himself was presented in petitioner's motion for post-conviction relief pursuant to Fla.Crim.P. 3.850 (ex. P, pp. 34-36).  The court rejected the claim without a hearing, applying *Strickland*, and holding that an *ex parte* request for a blood draw under Rule 3.220 is not improper, and that "[a] failure of defense counsel to receive a copy intended to be received is not an improper communication showing bias of the judge."  (Ex. P, p. 152).  The court further held that since there was no basis for a motion for recusal, there could be no ineffective assistance of counsel.

The Rule 3.850 court's holding depended on its interpretation of the Florida Rules of Criminal Procedure.   Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.   In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.   In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.   *Id.* at 1354-55.   The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.   *Id.*   The Eleventh Circuit held:   "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .   It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and  *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.   The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.   The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* -- the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.

> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*. Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

427 F.3d at 932.

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel moved for recusal. The motion would have been denied. Therefore, counsel cannot be faulted for having failed to made it. And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

3P.   Failure to object to lay opinions.

Petitioner next faults his attorney for not objecting to lay opinion testimony, specifically the testimony of several officers that the blood on the door of the mall and in the car was "fresh" or "appeared to be fresh." Petitioner raised this claim in his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, and the court denied relief, holding that the Florida Evidence Code allows lay witnesses to testify to what they perceive, citing Fla. Stat. § 90.701. The court therefore found that counsel was not ineffective for failing to make a baseless objection (ex. P, p. 152).

Like the previous claim, this is a matter of the interpretation of the state's evidence code. The state court has told us what would have happened if counsel had objected to the lay testimony, and this court will not go behind that holding. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ

should not issue.[7]

    **4P.**   **Failure to investigate juror contact with a witness.**

    Next petitioner contends that there was contact between a witness and one or more jurors which his attorney failed to investigate.  After lunch on the first day of trial defense counsel returned to court and saw a witness, Ms. Hatfield, talking to some jurors.  He immediately brought this to the attention of the court (ex. F, p. 126).  He told the judge that he had informed Ms. Hatfield that she was talking to jurors, and she responded that they were discussing Springtime Tallahassee.[8]  The court inquired of the witness, who said she had come back from lunch and was just sitting outside the courtroom and was talking to some people.  She did not say she knew they were jurors, but one had a name tag on.  She wasn't paying attention to anything going on around her – they were just discussing Springtime Tallahassee.  Defense counsel did not inquire (ex. F, p. 135).  The jury was brought in, and instructed that they were not to speak to anyone other than among themselves, and even then they were not to discuss any aspect of the trial (ex. F, pp. 143-145).  Defendant was present and raised no objection.

    This issue was presented to the Rule 3.850 court, which denied relief, holding that counsel had interviewed the witness and had concluded that no prejudice had occurred.  The court had also questioned all parties and found no irregularity, and followed up by a specific curative instruction (ex. P, p. 152).

    Petitioner here attempts to make something of nothing.  Inadvertent contact between a witness and some jurors happened in the hallway after lunch, nothing more than casual polite conversation passed between them, and the court appropriately addressed the matter to everyone's satisfaction.  Counsel did not inquire further, nor did he need to.  Petitioner offers nothing other than his

---

[7]The court notes that defense counsel obtained an admission from the state's expert serologist that there is no way to tell how old blood is (ex. H, p. 580).  That may be true in the scientific sense, but it does not trump a lay witness' observation that the blood was moist and bright red in color, and appeared to be fresh (ex. F, p. 289).  Any issue concerning how "fresh" the blood was went to the weight of the evidence, not its admissibility.  It was up to the jury to consider its weight.

[8]A local festival held around the end of March.

unsupported assertion that counsel should have done so.   This court will not speculate on what benefit this might have given petitioner because the matter was handled expeditiously and properly.   Petitioner has not shown that his attorney's performance was either deficient or prejudicial.   The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

　　　　1M.　　<u>Failure to suppress blood evidence.</u>

　　　　This ground is identical to ground 1P, discussed in detail above, and will not be readdressed.

　　　　2M.　　<u>Failure to call witness.</u>

　　　　Petitioner next contends that his attorney should have called an alibi witness. He says that Latonya Winfield would have testified that she was with the petitioner at the Tallahassee Mall at some point on the day of the robbery, that petitioner had purchased some shoes from the "Footlocker," and could produce a receipt.   This, he says, would help explain the fingerprint and blood on the door.   Petitioner says he told his lawyer about this witness, but counsel failed to call her.   Petitioner presented this claim to the Rule 3.850 court,  which rejected it.   The court held that the defense strategy maintained that petitioner was not present at the mall on the day of the robbery, and that this tactic would have undermined that strategy.   The court also held that the witness would not have swayed the jury given petitioner's blood on the mall door (ex. P., p. 155).   The court therefore held that counsel's performance was not ineffective.

　　　　Petitioner has not given this court anything other than his own unsupported assertion.   He has not presented an affidavit from Latonya Winfield supporting this claim, nor has he produced the alleged receipt.   On that basis alone his claim here would fail.   This court will not "'blindly accept speculative and inconcrete claims . . .'"   *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)).   Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro*

*se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[9]   Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

Moreover, in his original memorandum here petitioner says that Ms. Winfield was in the mall "on August 16, 1999," the day of the robbery (doc. 1, p. 6), but the respondent points to another item of interest.   That is, early in the proceeding counsel filed a notice of alibi, stating that petitioner was in Valdosta, Georgia with one Katrina Gaines, who would testify and corroborate the alibi (ex. A, pp. 53-54). In his reply to respondent's brief here, petitioner says that the two things are not inconsistent - that he was in the mall "prior to" the robbery, and Ms. Winfield could explain how his fingerprint and blood came to be on the door, and that he was in Valdosta, Georgia "at the time" of the robbery (August 16 at 1:24 p.m.).   Valdosta is 75 miles from Tallahassee by secondary roads, which the prosecution could easily prove.   It is very unlikely that the jury would have believed this set of facts given the time and distance involved, particularly when the car petitioner rented in Miami was found not in Valdosta, but near the mall, shortly after the robbery, and had petitioner's blood in it.   Petitioner makes no attempt to say how these speculative and inconcrete claims and this unusual set of facts could be reconciled into something a jury would accept as exculpatory.   The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.   Petitioner is not entitled to federal habeas relief, and the writ should not issue.

3M.   Failure to object to use of restraints.

Petitioner next contends that his attorney was deficient in failing to object to the use of a "Bundy brace."[10]   He says that because he was wearing the brace, he

---

[9]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

[10]A form of restraint device not visible while the defendant is seated.

elected not to testify, as that would have made him look bad in the eyes of the jury. The Rule 3.850 court rejected this claim, noting that a Bundy brace was placed on the petitioner outside the presence of the jury, that it was not visible to the jury, and that if petitioner had wanted to testify, he could have been seated in the witness seat outside the jury's presence.  The court further found that petitioner agreed on the record with the decision not to testify.  The Rule 3.850 court's factual findings are presumed correct.  Petitioner has not rebutted this presumption with clear and convincing evidence to the contrary.

The Supreme Court recently reiterated that the routine use of restraints such as shackles *visible to the jury* is a due process violation, *Deck v. Missouri*, 544 U.S. 622, 25 S.Ct. 2007, 161 L.Ed.2d 953 (2005).  Petitioner has not shown the court, nor has the court found, any case that prohibits the use of restraint devices the jury cannot see.  But petitioner has thrown in a novel wrinkle.  He says that he was denied his right to testify by the presence of the brace.  When questioning him at trial the court asked petitioner if he agreed with the decision not to testify, stating "I don't want to know why or what you - - why you made your decision.  That's not for the Court to determine.  It's strictly for you and your counsel."  (Ex. I, pp. 785-786).  Petitioner seizes on this as a reason for claiming to be confused and for not speaking up about his concern over the Bundy brace, implying that since the judge did not want to hear his reason for not testifying, he was not at liberty to disclose his "true" reason.

It is axiomatic that a criminal defendant has the right to testify in his or her own defense.  *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); *McGriff v. Dep't of Corrections,* 338 F.3d 1231, 1237 (11th Cir. 2003); *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).  Some courts have held that a waiver may be inferred from the defendant's conduct if he does not alert the trial court of a disagreement with counsel as to whether he should testify.[11]  *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th

---

[11]"[I]n exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected." *United States v. Pennycooke*, 65 F.3d 9, 12 (3rd Cir. 1995). The *Pennycooke* court's

Cir. 2000); *United States v. Webber,* 208 F.3d 545, 552 (6th Cir. 2000); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir.), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) ("if an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred.") (citation omitted).

Moreover, "[c]ourts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).  Such claims may be the subject of summary dismissal and do not always require a hearing. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991)(stating that a habeas petitioner "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement" to merit an evidentiary hearing, because producing less "is too facile a tactic to be allowed to succeed"); *Walker v. United States*, 238 F.3d 426, 2000 WL 1871681 (6th Cir. 1999) (unpublished opinion) (no hearing required);*United States v. Adams*, 198 F.3d 238, 1999 WL 812352, **1 (4th Cir.) (unpublished opinion) (claim was properly dismissed without a hearing).

This is one of those problematic cases.  Petitioner faults his attorney for not objecting to the brace.  This might have some merit if petitioner's attorney knew there was a concern, but nowhere does petitioner tell this court that he told his lawyer he was concerned about testifying *because he was wearing the brace.*[12] Petitioner has failed to show that his attorney was even aware of his alleged

---

illustration of an "exceptional circumstance" was a defendant who repeatedly interrupted the trial to express his desire to testify and interjected that his attorney was lying when his attorney told the court that the attorney and the defendant had made a joint decision that the defendant would not testify. *Id.* at 12 (citing *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir.1988)).

[12]Had he done so, it would be very surprising for counsel to ignore a claim of denial of such a fundamental right as the right to testify.  Defense counsel was aggressive at every turn of the case. His pre-trial discovery was extensive.  His objections were frequent, well reasoned and often well taken.  It strains credibility to say that if petitioner had told his lawyer he did not want to testify because of the brace, counsel would not have taken steps to deal with a situation that could have been resolved easily.

concerns about the brace, and counsel is not required to be a mind reader.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

       **4M.**    <u>Failure to strike juror.</u>

       Next petitioner says that counsel should have exercised a strike against a juror, Mr. Fox.  During jury selection venireman Fox disclosed that he had been the victim of an armed robbery three months earlier when two men put a gun to his head (ex. C, p. 179).  The following then transpired:

> MR. RIER [defense counsel]:  You are going to be hearing possible evidence about the use of a firearm in this case.  This is an armed robbery case.  Is it possible that might affect your opinion?
>
> MR. FOX: Not really.
>
> MR. RIER: Why is that?
>
> MR. FOX: Never lost any sleep over it.
>
> MR. RIER: You were able - -
>
> MR. FOX: They didn't get nothing.
>
> MR. RIER: You were able to put it behind you?
>
> MR. FOX: Yes, sir.

(Ex. C, pp. 179-180).  Mr. Fox had earlier committed to being fair and impartial (and would not hurry in considering a verdict) when he indicated that he was about to move away (ex. C, p. 99), and after he disclosed that he had once been subjected to non-judicial punishment while serving in the Army, he indicated that he could not think of any reason why he could not be fair and impartial (ex. C, p. 102).  The Rule 3.850 court rejected petitioner's claim, referring to the foregoing record, and further noting that defendant was present during jury selection.  The court found that defense counsel's performance was not ineffective.

       An ineffective assistance claim based on counsel's failure to strike an allegedly biased juror requires a petitioner to show that the juror was actually biased

against him. *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) ("Because [habeas petitioner's] claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, [the petitioner] must show that the juror was actually biased against him."); *Parker v. Turpin*, 60 F.Supp.2d 1332, 1362 (N.D. Ga. 1999) ("[T]o show attorney error and prejudice in defense counsel's failure to use peremptory strikes for [allegedly biased] venire men, it is necessary for Petitioner to show that the venire men did indeed harbor actual bias against Petitioner."). *See also Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (a defendant's Sixth Amendment right to a fair and impartial jury is not violated unless the defendant can show that a member of the jury which heard his case was biased); *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) ("To maintain a claim that a biased juror prejudiced him, . . . [a habeas petitioner] must show that the juror was actually biased against him." (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1981))); *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir. 1979) (a defendant has the burden of proving juror partiality or bias and must do so by a preponderance of credible evidence); *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976).

This petitioner has not even hinted at, much less shown bias. The record clearly shows that Mr. Fox was committed to being a fair and impartial juror, and petitioner's belief that because Mr. Fox had been the victim of an armed robbery he must necessarily have been lying about being fair, is speculation, not proof. Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    **5M.**   <u>Disloyalty to defendant.</u>

Next petitioner says that his attorney was "disloyal." Very shortly after the jury retired to deliberate a single juror passed a note to the bailiff asking "How tall is he?" The court and counsel conferred and agreed that the question could not be answered. This response was written by the judge on the juror's note and returned to him or her (ex. I, pp. 884-885). Later the court received a question from the

foreman asking whether "this" (the record does not show what "this" referred to) meant that "his height, does this mean six-feet-four inches, or six feet, .04 inches?" Both counsel and the court again agreed that no instruction could be given on the question (ex. I, pp. 885-887).  Petitioner says counsel should have addressed the question, and his failure to do so prejudiced him.  The Rule 3.850 court disagreed, holding that answering either question would be presenting new evidence or clarifying existing evidence, which would invade the jury's duty to base their verdict only on evidence presented during the trial.  Further, absent stipulation from the prosecution, the question could not be answered for the jury (ex. P, p. 154).  Thus, counsel was not constitutionally deficient in failing to pursue the issue.

Petitioner disagrees.  He says that the Florida Rules of Criminal Procedure provide only that a jury cannot be brought back in for the presentation of more evidence after retiring.  From this he concludes that the rule permits clarifying evidence.  However, he splits too fine a hair.  Explaining evidence, or commenting on evidence, is no different than presenting new evidence.  Moreover, this issue deals with a question of Florida law, and the court has already told us how it would have ruled if counsel had insisted on the questions being answered.  The motion would have failed.  Counsel cannot be faulted for failing to make a pointless motion. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

6M.   <u>Failure to object to improper prosecution argument.</u>

Next petitioner says that his counsel was ineffective in failing to object to improper prosecution argument.  During closing the prosecutor said:

> There were at least five people in this robbery, one of whom has been apprehended.  I would love to have four other people sitting here.  We don't control everything.  Maybe one day there will be.  I don't know. But we can only deal with what we have.  That's what we have.  We have one person.

(Ex. I, p. 825).  The Rule 3.850 court rejected petitioner's claim that this was improper

argument and that counsel should have objected.  The court held that the foregoing was mere argument and not personal belief of guilt, so there was no sustainable objection counsel could have made (ex. P, p. 153).  Further, the comment was made by counsel in the context of responding to defense counsel's argument that there were no eyewitnesses to the crime who could identify petitioner.

It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones.  *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935).  "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury."  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)(citing Model Rules of Professional Conduct, Rule 3.4(e)(1984); Code of Professional Responsibility, DR 7-106(c)(4) (1980); ABA Standards for Criminal Justice: 3-5.8(b)(2d Ed. 1980))).

In applying the various professional standards to the conduct of attorneys who appear before them, courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script."  *United States v. Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985) (quoting *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)).  "[I]n the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused."  *Id*. (citing *Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897)).

The state court found that counsel's failure to object was not deficient because the comment was not objectionable.  This was not an unreasonable application of *Strickland*.  Further, even if the remark was improper and counsel was ineffective for failing to object to it, the state court did not unreasonably apply *Strickland* when it denied relief, as petitioner cannot show prejudice.  Taken in context, and in the light of the blood and fingerprint linking petitioner directly to the crime, there is no reasonable probability that but for this single comment petitioner

would have been acquitted.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

      **7M.**   <u>Failure to object to lay opinions.</u>

      This ground is identical to ground 3P, discussed in detail above, and will not be readdressed.

      **8M.**   <u>Cumulative effect of ineffective assistance of counsel.</u>

      Finally, petitioner contends that the cumulative effect of all counsel's deficiencies denied him a fair trial.  As previously discussed, none of the alleged errors, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving petitioner of effective assistance of counsel or of rendering petitioner's trial fundamentally unfair.  The Rule 3.850 court reasonably concluded the same (ex. P, p. 155).

## CONCLUSION

      The state court did not unreasonably apply clearly established Supreme Court precedent when it denied relief on petitioner's claims of ineffective assistance of counsel.  Petitioner is therefore not entitled to federal habeas relief.

      Accordingly, it is ORDERED:

      The clerk shall change the docket to reflect that James R. McDonough has been substituted as respondent in this cause.

**And it is respectfully RECOMMENDED:**

That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Ernest Knight,* in the Circuit Court of Leon County, Florida, case no. 99-3196, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 20th day of February, 2007.


/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**